Grafton
Nos. 2000-411
 2000-648

MATT BRZICA & a.

v.

TRUSTEES OF DARTMOUTH COLLEGE & a.

Argued: November 13, 2001
Opinion Issued: February 22, 2002

*Wiggin & Nourie, P.A.*, of Manchester (*W. Wright Danenbarger* and *Mary Ann Dempsey* on the brief, and *Mr. Danenbarger* orally), for the plaintiffs.

*Sean M. Gorman*, of Hanover, on the brief and orally, for defendant Trustees of Dartmouth College.

*Orr & Reno, P.A.*, of Concord (*Steven L. Winer* on the brief and orally), for defendant Association of Alumni of Dartmouth College.

NADEAU, J. The plaintiffs, seven Dartmouth College alumni, appeal dismissal of their petition for declaratory judgment and injunctive relief. They argue that the Trial Court (*Fitzgerald*, J.) erred in ruling that: (1) the plaintiffs failed to allege sufficient facts to maintain a cause of action for misrepresentation; (2) no fiduciary duty existed between the trustees of Dartmouth College and individual alumni; (3) a fundraising campaign did not constitute trade or commerce and the alumni were not consumers under the Consumer Protection Act; (4) res judicata and the *Bricker* doctrine applied to these facts; and (5) the plaintiffs failed to state a claim for breach of the duty of good faith and fair dealing. In addition, the plaintiffs argue that the trial court erred by denying them the ability to discuss the trustees' minutes with their counsel, by refusing to allow adequate discovery and by allowing the Association of Alumni of Dartmouth College to intervene. We affirm.

*I. Facts*

Between 1991 and 1996, Dartmouth College undertook a capital campaign called the "Will-to-Excel Campaign" (campaign). The campaign raised approximately $568 million from Dartmouth alumni, including some but not all of the plaintiffs. Three years after completion of the campaign, the Board of Trustees of Dartmouth College (trustees) announced that it sought a "substantial change to the current residential and social system" and was "prepared to make a major investment to improve these areas of the College." Possible changes could affect "the fraternity and sorority system, dining arrangements, and other aspects of student life." A committee on the "Student Life Initiative" was established and, in January 2000, presented an extensive report to the trustees. The trustees indicated that changes to the residential and social system would require a modification of the fraternity and sorority system and expressed an intention to engage in "community discussion" prior to making any changes.

In 1999, the plaintiffs brought this action seeking declaratory judgment and injunctive relief to prevent Dartmouth College from eliminating single-sex fraternities and sororities and expending campaign funds for this purpose. The plaintiffs alleged that the conduct of the trustees in raising the campaign funds: (1) constituted a breach of fiduciary duty; (2) constituted misrepresentation; and (3) violated the New Hampshire Consumer Protection Act. In addition, the plaintiffs alleged that certain trustees were not properly elected and their presence on the board amounted to a breach of fiduciary duty by the trustees as well as a breach of good faith and fair dealing under an 1891 agreement between the trustees and the alumni. Finally, the plaintiffs alleged that the decision regarding the Student Life Initiative was made under the constraint of a "trustees charge" which prevented consultation by alumni trustees with the alumni constituency and thereby constituted a breach of the duty of good faith and fair dealing arising under the 1891 agreement.

*II. Intervention*

We begin with the plaintiffs' contention that the trial court erred in allowing the alumni association to intervene in this case. The alumni association is an unincorporated association consisting of all living alumni. It moved to intervene because of concern about the effect a decision regarding amendments in 1990 to the trustee election process could have on nominating alumni trustees and on its constitution.

■ Superior Court Rule 139 provides that "[a]ny person shown to be interested may become a party to any proceeding in equity on his petition briefly setting forth his relation to the cause." "The right of a party to intervene in pending litigation in this state has been rather freely allowed as a matter of practice." *Scamman v. Sondheim*, 97 N.H. 280, 281 (1952). A trial court should grant a motion to intervene if the party seeking to intervene has a right involved in the trial and a direct and apparent interest therein. *Snyder v. N.H. Savings Bank*, 134 N.H. 32, 35 (1991). We may not overturn the trial court's decision unless we are persuaded that the court's exercise of discretion is unsustainable. *See id.* at 34; *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard).

■ The plaintiffs argue that because they have not asked for relief against the association, it does not have a sufficient interest in this litigation to support its intervention. We find this argument unpersuasive. As discussed below regarding application of the *Bricker* doctrine to the facts of this case, the relief the plaintiffs sought against the college would

have a direct effect on the association. The trial court's exercise of discretion in granting the motion to intervene is sustainable.

### III. Fundraising Counts

Counts I-III of the petition for declaratory judgment evolve from the plaintiffs' main allegation that prior to or during the campaign, the trustees decided to eliminate single-sex fraternities and sororities from the Dartmouth campus, but withheld the announcement until after the conclusion of the capital campaign. Count I alleges that the trustees' failure to make this disclosure constituted a breach of fiduciary duty owed by the trustees to the alumni. Count II alleges that this nondisclosure constituted a negligent or intentional misrepresentation by the trustees. Count III alleges that this nondisclosure constituted an unfair or deceptive act or practice in violation of the Consumer Protection Act, RSA chapter 358-A.

The trial court dismissed the fundraising counts, ruling that: the plaintiffs failed to plead misrepresentation with particularity; there is no fiduciary relationship between the trustees and the alumni; and the alleged conduct did not fall within the scope of the Consumer Protection Act. The plaintiffs then moved to reopen consideration of the fundraising counts based on "newly discovered evidence." The trial court denied the motion because the plaintiffs had not overcome the requirement in Superior Court Rule 15 that they have had a good faith factual basis for their allegations when they filed the petition for declaratory judgment and injunctive relief. The trial court subsequently imposed sanctions for the plaintiffs' Rule 15 violation.

#### A. Fiduciary Duty

Count I alleges that the trustees breached a fiduciary duty to alumni for failing to announce the proposed change to the residential system prior to or during the fundraising campaign. The plaintiffs argue that the inclusion of alumni trustees on the board creates an inference that a fiduciary relationship exists between the board and the alumni and, more specifically, that the board and its alumni trustees owed a fiduciary duty to the alumni with respect to the use of alumni donations in implementing major policy changes.

In this State, "[a] fiduciary relationship has been defined as a comprehensive term and exists wherever influence has been acquired and abused or confidence has been reposed and betrayed." Lash v. Cheshire County Savings Bank, 124 N.H. 435, 438 (1984) (quotation and brackets omitted). "[A] confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with

the other's interest in mind." *Cornwell v. Cornwell*, 116 N.H. 205, 209 (1976). "Once a person becomes a fiduciary, the law places him in the role of a moral person and pressures him to behave in a selfless fashion while contract law does not go beyond the morals of the market place where self-interest is the norm." *Lash*, 124 N.H. at 438 (quotations and brackets omitted).

The trial court found that, even assuming that the trustees had concealed from the alumni a decision to eliminate fraternities and sororities, the "[plaintiffs] have pled no facts, even taking all they pleaded as true and construing all reasonable inferences in favor of [them], sufficient to establish that a fiduciary duty exists between the trustees and the alumni." The trial court explained that

> [t]he [plaintiffs] fail to allege, nor can the Court conceive, of a manner in which the trustees have "acquired influence" over the alumni and "abused" such influence or "reposed and betrayed" a confidence by executing a fund raising campaign. The Court finds that the presence of an alumni trustee on the board does not create a fiduciary relationship in and of itself. A college does not acquire influence over its alumni by soliciting donations in a capital campaign, or by the receipt of donations from alumni. The nature of the transaction is a voluntary gift by the alumni to the college for the benefit of the college. Neither a confidential relationship nor a fiduciary relationship has been created by this transaction.

(Citation omitted.)

We agree with the trial court that no facts were pled to establish that the alumni stood in such a submissive, inferior or dependent position with respect to the college in the capital campaign so as to support the existence of a fiduciary relationship.

*B. Misrepresentation*

The plaintiffs argue that the trustees indicated during the campaign that the purpose for raising the funds included: (1) to provide financial assistance to students; (2) to keep increases in tuition at a modest level; (3) to construct a new library and teaching facility; (4) to improve computer equipment for the faculty; and (5) to improve curriculum and athletic programs. Count II alleges that the trustees misrepresented or negligently failed to advise alumni that the donated funds would also be used for the social and residential system change. Had such disclosure

been made, the plaintiffs allege that alumni contributions would have been substantially reduced.

█ "The essence of fraud is a fraudulent misrepresentation. In order to withstand a motion to dismiss, the plaintiff must specify the essential details of the fraud, and specifically allege the facts of the defendant's fraudulent actions. It is not sufficient for the plaintiff merely to allege fraud in general terms." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 46-47 (1987) (ellipsis, brackets, citation and quotation omitted).

The plaintiffs argue that they set forth sufficient factual allegations to survive a motion to dismiss in that they "alleged that the Trustees made representations as to how the solicited funds from the Campaign would be allocated but remained silent about its consideration to use part of the funds to implement a radical restructuring of the social and residential structure of Dartmouth, including the elimination of single-sex fraternities and sororities." The plaintiffs admit that they do not have evidence which proves that the trustees "had a specific intent to not reveal this controversial idea to Alumni during the Campaign for fear that it would reduce contributions," but the plaintiffs argue they were not required to do so at a motion to dismiss.

At a hearing on the motion to dismiss, the trial court extensively questioned plaintiffs' counsel regarding factual support for the allegation that a secret decision by the trustees had been made and concealed. The plaintiffs complained that they could not make specific allegations and provide detailed facts because of their lack of access to the trustees' meeting minutes. The trial court then allowed the plaintiffs' counsel an opportunity to review the confidential minutes for evidence of such a decision, ordering the trustees to provide the plaintiffs with copies of the trustees' minutes from 1990-1996. After their review of the minutes, the plaintiffs were to "provide the Court with additional pleadings to allege the actual facts of the purported decision by the Trustees to eliminate single sex residential housing organizations, *i.e.*, fraternities and sororities."

The trial court subsequently dismissed the fundraising counts, explaining:

> The [plaintiffs] have failed to provide the Court with specific allegations of facts of the [defendants'] allegedly fraudulent actions of intentionally keeping silent about a decision to overhaul the single sex residential system on the Dartmouth campus. Rather, the [plaintiffs] continuously repeat what amounts to a conspiracy of silence by [the] trustees, for an apparent duration of years, although no specific time period for

> the purported decision ... has been provided to the Court. [Despite being allowed to review the Board's minutes,] [the plaintiffs] cannot make their allegations any more specific than conclusory language of a vague conspiracy theory.

In its order denying the plaintiffs' motion for reconsideration, the court further stated that

> the [plaintiffs] have not supplied this Court with even a scintilla of evidence to support [the misrepresentation claim] despite the fact that the Court gave the [plaintiffs] additional time to submit pleadings based upon information provided in the [trustees'] minutes. To continue to permit discovery would essentially result in this Court requiring the [defendants] to defend vexatious litigation.

■ The record supports the trial court's conclusion that the plaintiffs could offer no evidence that a decision by the trustees to eliminate fraternities and sororities was made and concealed. As the trial court correctly noted, the standard of review for a motion to dismiss is whether "the facts as pled are sufficient under the law to constitute a cause of action. ... The court must rigorously scrutinize the complaint to determine whether, on its face, it asserts a cause of action. ... However, the court need not accept as true statements in a complaint which are mere conclusions of law." (Citations omitted.) We agree with the trial court that the plaintiffs' broad allegation that at some time the trustees made and concealed a decision to eliminate fraternities and sororities from the Dartmouth campus fails to meet the requirement that the petition "specify the essential details of the fraud." *Proctor v. Bank of N. H.*, 123 N.H. 395, 399 (1983).

Furthermore, we reject the plaintiffs' claim that they were denied further discovery that could have supported their claim and that it was error to restrict review of the trustees' minutes to plaintiffs' counsel. There is no support for allowing the plaintiffs to make meritless fraud claims and search for support for those claims later. The trial court generously gave the plaintiffs a chance to add specificity to their petition after reviewing one thousand pages of confidential trustees' minutes. As the trial court stated, "[The plaintiffs] persist in their belief that they should be permitted vexatious and meddlesome discovery to find evidence for their imagined claims. Such claims should have had a factual basis before suit was brought."

## C. Consumer Protection Act

Count III alleges that the actions of the trustees in counts I and II constitute an unfair or deceptive business practice under the New Hampshire Consumer Protection Act, RSA 358-A:2 (Supp. 2001) (Act).

RSA 358-A:2 provides that "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." The section provides several examples of conduct which meet this standard. RSA 358-A:2, I-XIII. The court's inquiry does not "end with this list . . . because the statute itself states that it is not limited to the listed transactions." *Gautschi v. Auto Body Discount Center*, 139 N.H. 457, 459-60 (1995). However, "the phrase 'including but not limited to' . . . limits the applicability of the Consumer Protection Act to those *types* of acts." *Roberts v. General Motors Corp.*, 138 N.H. 532, 538 (1994) (brackets and quotation omitted). "Trade or commerce" is defined under the Act as including "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated." RSA 358-A:1, II.

Fraudulent or deceptive conduct can be actionable under the Act if it occurs in a business setting involving the advertising or sale of a commodity or service as part of the day-to-day business of the defendant. *See Snow v. American Morgan Horse Assoc.*, 141 N.H. 467, 471 (1996). "To determine whether the Consumer Protection Act applies to a particular transaction, we analyze the activity involved, the nature of the transaction, and the parties to determine whether a transaction is a personal or business transaction." *Hughes v. DiSalvo*, 143 N.H. 576, 578 (1999). "Remedies under the Consumer Protection Act are not available where the transaction is strictly private in nature, and is in no way undertaken in the ordinary course of a trade or business." *Id.* (quotations omitted).

The trial court ruled that "[t]he nature of the relationship between the trustees and the [school's alumni] is one of donor and donee; the nature of the transaction is a gift." The court found that

> the [plaintiffs] could not be viewed as consumers, nor could the fund-raising campaign be viewed as occurring in the ordinary course of trade or business. The college was not seeking the annual operating expenses during the fund-raising campaign. The facts of the fund-raising campaign clearly indicate a transaction that is "strictly private in nature."

■■ We agree with this analysis. In the context of the fundraising campaign at issue in this case, the alumni are not "consumers" of a good or service and thus the "trade or commerce" requirement of the statute is not met. Gifts are not business transactions and contributors of such gifts are not consumers seeking to purchase goods or services. In addition, it is apparent that the fundraising activities at issue do not fall within the examples in the Act of unfair or deceptive acts or practices. *See* RSA 358-A:2. Nor do the fundraising activities resemble those types of acts.

We also agree with the trial court that the plaintiffs' reliance on *Gamble v. University System of New Hampshire*, 136 N.H. 9, 17 (1992), for the proposition that the Act applies to all matters involving colleges and universities, is not appropriate. In *Gamble*, this court assumed, *arguendo*, that RSA chapter 358-A applied in the case. The opinion itself makes clear, however, that neither party briefed nor appealed the issue of the applicability of the Act to the dispute between students and the University of New Hampshire over tuition increases. *Id.* We are unwilling to extend the limited holding of that case to all situations involving colleges and universities.

*IV. 1990 Amendment Counts*

Counts IV-VI are based on changes that were implemented in 1990 to the manner in which trustees are selected.

The board of trustees was created by charter in 1769. At that time there were twelve trustees and vacancies could be filled by a majority vote of the trustees. In 1891, the trustees and the Association of Alumni of Dartmouth College (association) approved a proposal whereby the trustees agreed to take no action to fill the next five vacancies on the board, or succeeding vacancies of those five seats, without first giving at least three months' notice to the secretary of the association. During those three months, the trustees would accept a nomination of a suitable successor by the alumni. The trustee to be replaced would then resign his seat, and it was agreed that the person nominated by the alumni would be elected by the trustees to fill the seat. The plaintiffs refer to this arrangement as the "1891 agreement."

Prior to 1990, when an alumni trustee seat became vacant the alumni council (established in 1913 and given primary responsibility for selecting the alumni nominees for the alumni trustee seats on the board) would select one individual to be the alumni nominee for the trustee seat. Alternatively, candidates could be put forward by petition of a group of alumni to oppose the alumni council's choice and, if such a petition candidate emerged, all alumni would choose between the two candidates by a balloting process run by the association. In the absence of a petition

candidate, the alumni council's candidate's name was forwarded directly to the board as the alumni nominee for election as a trustee.

In 1989 and 1990, a joint committee of alumni and trustees appointed by the board, the Committee on Board Organization (committee), reviewed the process for selecting alumni nominees for trustee seats. The formation of the committee was prompted by concern about the costs of balloting contests that had resulted from a number of petition candidates nominated during the 1980s to challenge alumni council candidates. In 1990, the board of trustees, the alumni council, and the association approved recommendations of the committee for change in the election process.

The alumni council held a forum in New York in March 1990 to allow alumni to discuss the committee's recommendations. In April 1990, the board of trustees approved the recommendations and in May the alumni council approved them. In June 1990, the association held its annual meeting and voted to adjourn the meeting to September to determine whether the association's constitution should be amended to incorporate the changes necessary to implement the new procedures. In July 1990, all alumni were mailed a report by the association which included written notice of the time, place and subject matter of the September meeting. In September, those in attendance at the meeting approved by a three-quarter vote a change in the association's constitution to reflect the recommendations of the committee.

Count IV alleges that, as a result of the college's "domination and control" of the association, the college owes a fiduciary duty to the alumni. The plaintiffs argue that this duty was breached by the college's failure to alert the alumni to the existence of the 1891 agreement and failing to recommend independent legal advice prior to the vote on the 1990 amendments. Count V alleges that the 1891 agreement is an enforceable contract in which the law implies a duty of good faith and fair dealing, and that the aforementioned conduct breached this implied duty.

This is the third lawsuit brought by some combination of these plaintiffs regarding the 1990 amendments. In 1995, an action for declaratory judgment and injunctive relief was filed in Merrimack County Superior Court challenging the 1990 amendments (*"Tell I"*). The court dismissed the petition on the basis of judicial non-interference with the internal affairs of associations. The court denied the plaintiffs' subsequent motion to amend the petition to add counts for breach of fiduciary duty and breach of the duty of good faith and fair dealing. We declined the appeal of the case.

In 1996, suit was filed against the trustees in United States District Court for the District of New Hampshire and class action certification was sought (*"Tell II"*). The action was dismissed for failure to join a necessary

party, the alumni association. Joinder would destroy diversity jurisdiction, the basis for the federal court jurisdiction. The United States Court of Appeals for the First Circuit affirmed the dismissal. *See Tell v. Trustees of Dartmouth College*, 145 F.3d 417 (1st Cir. 1998).

The plaintiffs then filed the suit at issue. Two of the seven alumni plaintiffs in this case joined in both *Tell I* and *Tell II*. In all cases, the plaintiffs named the trustees as defendant.

The trial court dismissed counts IV and V based upon res judicata. The plaintiffs argue that applying res judicata was error because their motion to amend their *Tell I* complaint to add these claims was denied, and counts IV and V constitute different causes of action than the claims in *Tell I*.

"The essence of the doctrine of res judicata is that a final judgment by a court of competent jurisdiction is conclusive upon the parties in a subsequent litigation involving the same cause of action." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 273 (1987) (quotation omitted).

> Spurred by considerations of judicial economy and a policy of certainty and finality in our legal system, the doctrines of res judicata and collateral estoppel have been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end.

*Id.* (quotation omitted). Res judicata "precludes the litigation in a later case of matters actually litigated, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action." *In re Alfred P.*, 126 N.H. 628, 629 (1985).

 ██ For the doctrine to apply, three elements must be met: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered on the first action. *See Hallisey v. DECA Corp.*, 140 N.H. 443, 444-45 (1995). In determining whether the cause of action in the second suit is different from the first, the court broadly construes a cause of action to mean "the right to recover, regardless of the theory of recovery. A theory of recovery therefore must be pleaded, or be subject to bar." *Eastern Marine*, 129 N.H. at 274.

The trial court found each of the required elements was met. As to privity, the court reasoned that

> [i]n both the Merrimack Superior Court action and the instant action, the respondent named in the petitions are [*sic*] identical — Trustees of Dartmouth College. Two of the named petitioners are

identical — William K. Tell, Jr. and Robert E. Fuller. Likewise, both actions are intended as class actions consisting of alumni .... The Court finds that such similarity and overlap of the parties — and the same vision, to bring a class action on behalf of alumni of the college — establishes privity between the parties in both actions.

Also, the trial court found that the judgment was final on its merits because the Merrimack County Superior Court denied the amendment to the petition that was dismissed for failure to state a claim and this court declined the appeal.

As for the same cause of action being litigated, the trial court found that the essence of the claims presented in counts IV and V "is identical to two amendments proffered subsequent to the dismissal of the Merrimack action." Despite the fact that those amendments were denied because the Merrimack County Superior Court found that they proposed new causes of action, the trial court here reasoned that "the same factual transaction is at issue." The court stated,

> The factual transaction in question is the modification to the alumni trustee election procedure that occurred in 1990. As such, the parties are now barred from bringing an action that attempts to make the same challenge, dressed up in whatever new cloth the [plaintiffs] choose to weave. The change in label is simply not sufficient to reopen the question for adjudication today. The claims are ones that could have been brought by the parties in the previous action. The [plaintiffs'] true error was a failure to bring the amendments as part of their initial pleading, filed in Merrimack County, when the issue would have been timely, for the purposes of res judicata. Failure to bring these claims in a timely manner precludes the petitioners from bringing them at this time.

(Citation omitted.)

We agree with the trial court that the same factual transaction has given rise to the plaintiffs' variety of legal allegations. Both the earlier lawsuits and the present one rely upon the facts surrounding the adoption of the 1990 amendments to the association's constitution. "Cause of action" has a broad transaction definition in the res judicata context, including the right to recover regardless of the theory of recovery. Res judicata will bar a second action even though the plaintiff is prepared in the second action

to present evidence or grounds or theories of the case not presented in the first action. *Eastern Marine*, 129 N.H. at 275.

The trial court also ruled that counts IV and V could be dismissed under the *Bricker* doctrine. *See Bricker v. N.H. Medical Society*, 110 N.H. 469 (1970). The plaintiffs argue that the *Bricker* doctrine does not apply because they do not seek any relief against the association; rather, they are only asking the court to "enjoin the Trustees from breaching their obligations under the 1891 Agreement." The relief requested, however, would necessarily interfere with the internal affairs of the association. The plaintiffs seek a ruling that, as a result of the trustees' conduct in connection with the adoption of the 1990 amendments, the trustees may not seat alumni-nominated trustees pursuant to the procedures set forth in the 1990 amendments. Such a ruling would have a direct effect upon the association.

██ ██ "Judicial interference in the internal affairs of associations is strictly limited and will not be undertaken in the absence of a showing of injustice or illegal action and resulting damage to the complaining member." *Bricker*, 110 N.H. at 470. The trial court noted that counts IV and V essentially seek a judicial declaration that the 1990 modification to the selection process of alumni trustees is invalid. The court recognized that in order to involve itself in this dispute it must find injustice or illegal action, and was unable to do so. Rather, the court found that "[the plaintiffs] allege a dispute with the internal governance procedures of the alumni association and the college. Such dissatisfaction does not meet the threshold necessary to intrude upon the association's internal affairs." We agree.

"[A]s to all questions of policy, discipline, internal government, and custom, the legal tribunals must accept as binding the decision of the regularly constituted judicatories of the church, fraternity, association, or society." *Yeaton v. Grange*, 77 N.H. 332, 334 (1914) (quotation omitted). The plaintiffs have not "stated any logical reason for the interference here by the courts in the internal affairs of the [association] and we can conceive of none." *Bricker*, 110 N.H. at 470. "No injustice has been done which the equity powers of the court can remedy, and the grounds of complaint are of a character so intangible as to elude the grasp of judicial cognizance." *Id.* at 471 (quotation omitted).

The last count, count VI, alleges that the 1891 agreement is an enforceable contract and that the trustees breached the duty of good faith and fair dealing owed under it by requiring members of the board of trustees to take an oath, the "trustees' charge," prior to being seated on the board. This charge requires that all deliberations of the trustees

remain confidential, all final decisions be given unanimous support and all decisions of the trustees be communicated through the president or chairman. The plaintiffs argue that requiring alumni trustees to take the charge "prevent[s] Alumni Trustees from consulting with the alumni as to whether such Trustees' actions on the Board are in the alumni's interest."

The trial court assumed, *arguendo*, that the agreement is a valid contract and dismissed count VI for failure to state a claim upon which relief could be granted. Viewing all the facts in the petition as true and construing all reasonable inferences in the light most favorable to the plaintiffs, the court was unable to conclude that the petition alleges a breach of a duty of good faith and fair dealing. The court stated that

> the charge does not require the alumni trustees to renounce the constituency of the alumni as argued by the [plaintiffs]. Nothing in the charge requires the alumni trustees to forsake their constituency of alumni; nothing prevents the alumni trustees from contacting other alumni for information or opinions on an aspect of the college or college governance. Rather, the charge requires the trustees to maintain the confidentiality of the board's deliberations. There is simply no possible way to construe the desire to maintain confidentiality in proceedings or to present decisions unanimously as constituting bad faith. Nothing provided to the Court suggests that alumni trustees could not gather information from alumni or any other source regarding a particular issue.

We find no error in the court's dismissal.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.