Torromeo v. Fremont                  CV-03-481-SM  10/12/04
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Henry Torromeo and
MDR Corporation,
      Plaintiffs

      v.                                Civil No. 03-481-SM
                                        Opinion No. 2004 DNH 148
Town of Fremont,
      Defendant


                         **O R D E R**


      Plaintiffs, Henry Torromeo and MDR Corporation, bring this

action against the Town of Fremont, seeking damages for what they

say was the Town's unlawful and unconstitutional delay in issuing

various building permits.  See generally 42 U.S.C. § 1983.

According to plaintiffs, by unlawfully delaying the issuance of

building permits requested by them, the Town temporarily effected

a taking of their property for public use, without paying them

just compensation.  Additionally, plaintiffs claim the Town

deprived them of Due Process and Equal Protection, in violation

of the United States Constitution.

The Town moves to dismiss plaintiffs' three-count complaint, saying their claims are barred by the Rooker-Feldman doctrine and res judicata. Plaintiffs object.

**Standard of Review**

When ruling on a motion to dismiss, the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). See also Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002). Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law. See Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) ("Factual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but

2

this tolerance does not extend to legal conclusions or to 'bald assertions.'") (citations omitted).  See also Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

Here, in support of its motion to dismiss, the Town relies upon various state and federal court filings made by plaintiffs in prior litigation, opinions issued by New Hampshire state courts, and the United States Supreme Court's denial of plaintiffs' petition for writ of certiorari.  Typically, a court must decide a motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to that complaint) or convert the motion into one for summary judgment.  See Fed. R. Civ. P. 12(b).  There is, however, an exception to that general rule:

> [C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted).  See also Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  Since plaintiffs do not dispute the

authenticity of the documents upon which the Town relies, the court may properly consider those documents without converting the Town's motion to dismiss into one for summary judgment.

## Background

Torromeo owns approximately 100 acres in the Town of Fremont, and MDR owns approximately 50 acres. Both parcels are zoned to permit residential construction. In February of 1997, the Town approved Torromeo's subdivision plan for "Mason's Corner," and that plan was recorded with the county registry of deeds. Approximately two and one-half years later, the Town approved MDR's subdivision plan for "Glidden Hill Estates," and that plan, too, was recorded in the county's land records.

In March of 1999, the Town adopted a growth control ordinance (the "Ordinance") which authorized the Fremont Planning Board to limit the number of building permits issued annually for the construction of residential units within the Town. Pursuant to that ordinance, the Town implemented "Growth Control and Permit Limitations," which limited to 16 the number of building permits that would be issued to property owners during the one-

4

year period between April 14, 1999, and April 13, 2000.  Within

that time frame, MDR applied for six permits to construct single-

family units at Glidden Hill Estates.  The Town issued only five

and informed MDR that it must wait until April of 2000 before

additional building permits would issue for that development.

Later, Torromeo sought building permits for the five remaining

lots at Mason's Corner.  That request was, however, denied since

the Town had already issued the maximum number of building

permits for that year under the Ordinance.

In August of 1999, MDR brought a petition for declaratory

judgment in Rockingham County Superior Court, alleging that the

Town's Ordinance was not enacted in compliance with state law and

was, therefore, unenforceable.  The state court agreed, and ruled

that the Ordinance was invalid dating back to its adoption.  The

New Hampshire Supreme Court summarily affirmed the trial court's

decision.  Accordingly, the Town stopped enforcing the Ordinance

against MDR and issued the requested building permits.[1]

---

[1]    Under New Hampshire law, municipalities are authorized
to "regulate and control" the timing of local development by, for
example, enacting growth control ordinances such as the one
adopted by Fremont.  N.H. Rev. Stat. Ann. 674:22.  Importantly,
however, "[a]ny ordinance imposing such a control may be adopted
only after preparation and adoption by the planning board of a

5

Torromeo also filed a petition for declaratory judgment in Rockingham Superior Court, claiming that because the Town approved his subdivision plan prior to adopting the Ordinance, it was exempt from the provisions of the Ordinance. Again, the court agreed and ordered the Town to issue the requested building permits. The Town complied.

In March of 2000, plaintiffs joined forces and filed an action in the Rockingham County Superior Court seeking damages from the Town for inverse condemnation. Pointing to the fact that the state court previously ruled the Town's Ordinance invalid, plaintiffs claimed entitlement to damages for the temporary "taking" of their property (i.e., the delayed issuance of the building permits). In support of their view, plaintiffs invoked provisions of both the state and federal constitutions. See Complaint at para. 21 ("On March 21, 2000, Plaintiffs each filed actions in the Rockingham County Superior Court to obtain just compensation for a taking under the U.S. and New Hampshire Constitutions." (emphasis supplied).

master plan and a capital improvement program." Id. Fremont's ordinance was declared void ab initio because the state court concluded that the Town failed to adopt a valid capital improvement program.

6

The state trial court agreed with plaintiffs, and concluded that they were entitled to compensation for the economic loss they suffered as a result of the Town's delay in issuing the building permits. Accordingly, the court ordered the Town to pay Torromeo damages in the amount of $23,800, and MDR damages in the amount of $71,600.

The Town appealed those decisions to the New Hampshire Supreme Court. In their joint brief, plaintiffs cited both the state and federal constitutions in support of their view that the lower state court had properly found that they were entitled to compensation for the temporary "taking" of their property. See, e.g., Exhibit D to defendant's motion to dismiss, plaintiffs' brief to the New Hampshire Supreme Court, at 8 ("The Town, by imposing the invalid Growth Ordinance, caused a 'taking' of plaintiffs' property violating their protected right to use and enjoy their property as a fundamental right protected by both our State and Federal Constitutions. . . . The Constitution prohibits takings without compensation."). See also id. at 11 ("The right to use and enjoy one's property is a fundamental right protected by both our State and Federal Constitution. The Fifth Amendment

7

of the United [States] Constitution provides, 'nor shall private property be taken for public use without just compensation.'").

The New Hampshire Supreme Court concluded that plaintiffs were not entitled to compensation and, therefore, reversed the trial court's damages award. Torromeo v. Town of Fremont, 148 N.H. 640 (2002). Specifically, the court held that while the Town's Ordinance had previously been declared invalid, plaintiffs had not demonstrated that it was unconstitutional. The court went on to discuss the distinction between a local ordinance that is unconstitutional and one that is merely unenforceable due to a procedural defect in its enactment. It then noted that, absent proof from plaintiffs that the Ordinance was unconstitutional, rather than merely procedurally flawed, "this case presents merely the type of municipal error for which judicial reversal of the erroneous action is the only remedy." Id. at 644. Accordingly, the court held that "plaintiffs are not entitled to damages, and . . . their only remedy is issuance of the erroneously-denied building permits." Id.

8

Plaintiffs sought review by the United States Supreme Court. Again, they relied upon the federal constitution in support of their view that they were entitled to compensation from the Town for the temporary taking of their property.  See, e.g., Exhibit F to defendant's motion, plaintiffs' petition for writ of certiorari at 2 ("Certiorari should be granted to clarify that a municipality can violate the Takings Clause when it enforces an illegal land-use law, which a court declares was invalid from the start, and refuses to provide the constitutional remedy of 'just compensation' promised by the Fifth Amendment.").  The Supreme Court denied plaintiffs' petition for certiorari.  Torromeo v. Town of Fremont, 539 U.S. 923 (2003).

Having been denied relief by New Hampshire Supreme Court (and the United States Supreme Court), plaintiffs filed this federal suit against the Town.  In their three-count complaint, plaintiffs allege: (1) the "application of the Town's Growth Control Ordinance . . . deprived [them] of the economic use of their respective properties, in violation of the Fifth and Fourteenth Amendments."  Complaint at para. 32; (2) the Town's denial of building permits, "to which plaintiffs were entitled,

9

constitutes a denial of due process." Complaint at para. 37; and (3) they were "treated disparately because they were not permitted to receive building permits solely by virtue of the Town's unreasonable application of the illegal Ordinance to their respective projects." Complaint at para. 41. As noted above, the Town moves to dismiss plaintiffs' claims, invoking the Rooker-Feldman doctrine and principles of res judicata.

**Discussion**

I.    The Rooker-Feldman Doctrine.

The Rooker-Feldman doctrine precludes a federal district court from reviewing a final judgment entered in a state court, and from considering claims that are inextricably intertwined with those raised in the state court proceeding. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983). See also Wang v. New Hampshire Bd. of Registration in Medicine, 55 F.3d 698, 703 (1st Cir. 1995). Federal claims are inextricably intertwined with state court proceedings (even if precisely the same claims were not raised previously in state litigation) if the party had an opportunity to raise those claims

10

in the state court and if their resolution in federal court would effectively provide a form of federal appellate review of the state court's decision.  See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).

Moreover, once a state court issues a final judgment, a federal district court lacks jurisdiction to review that decision even if the state judgment is patently wrong or was entered following patently unconstitutional proceedings.  See Feldman, 460 U.S. at 486.  Thus, a litigant may not seek to reverse a final state court judgment "simply by casting his complaint in the form of a civil rights action."  Ritter v. Ross, 992 F.2d 750, 754 (7th Cir. 1993) (citation omitted).

Here, plaintiffs' federal suit is little more than a thinly disguised effort to reverse the New Hampshire Supreme Court's decision rejecting their claimed entitlement, under the Fifth Amendment, to damages for the temporary "taking" of their real property.  Consequently, that constitutional claim is "foreclosed by a textbook application of the Rooker-Feldman doctrine."

11

Picard v. Members of the Employee Ret. Board, 275 F.3d 139, 145 (1st Cir. 2001).

The same is true with regard to plaintiffs' Fourteenth Amendment claims (counts two and three), which are "inextricably intertwined" with their Fifth Amendment claim.  As the court of appeals for this circuit has observed:

> Where a party did not actually present its federal claims in state court, Rooker-Feldman forecloses lower federal court jurisdiction over claims that are "inextricably intertwined" with the claims adjudicated in a state court.  A federal claim is inextricably intertwined with the state-court claims if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

Sheehan v. Marr, 207 F.3d 35, 39-40 (1st Cir. 2000) (citations and internal punctuation omitted).  In this case, to rule in plaintiffs' favor on their Fourteenth Amendment claims would, in essence, require this court to reverse the New Hampshire Supreme Court's holding that plaintiffs failed to demonstrate that the Ordinance was unconstitutional, that they "are not entitled to damages, and that their only remedy is issuance of the erroneously-denied building permits."  Torromeo v. Town of Fremont, 148 N.H. at 644.  The Rooker-Feldman doctrine plainly

12

provides that this court lacks jurisdiction to issue such a ruling. See, e.g., Hill v. Town of Conway, 193 F.3d 33, 40 (1st Cir. 1999) ("Appellants in the face of a Superior Court determination that they 'are not entitled to damages,' have sought in their § 1983 suit a 'Judgment . . . awarding an amount of damages that will fairly compensate . . . for the taking of their real property.' In short, . . . the relief for which the plaintiffs prayed would, if granted, effectively void the state court's judgment. As the district court properly determined, Rooker-Feldman precludes such an adjudication.") (citation and internal quotation marks omitted).

In support of their view that the Rooker-Feldman doctrine does not preclude relitigation of their federal constitutional claims in this forum, plaintiffs rely on Santini v. Conn. Hazardous Waste Mgmt. Serv., 342 F.3d 118 (2d Cir. 2003). That reliance is, however, misplaced. First, unlike the plaintiff in Santini, these plaintiffs were not precluded from litigating their federal constitutional claims in state court. See id. at 129 ("Santini did not, and could not, present his federal claim to the state court. . . . the Connecticut state courts would not

have adjudicated Santini's federal takings claim [even] if he had presented it to them."). In fact, as they unequivocally assert in their complaint, plaintiffs in this case <u>actually advanced</u> their federal constitutional claims in state court. <u>See</u> Complaint at para. 21.

Moreover, in <u>Santini</u>, the court of appeals held that a plaintiff who must, pursuant to <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172 (1985), litigate his or her takings claims in state court, may specifically notify the court that he or she is <u>reserving</u> any federal constitutional claims for resolution by the federal district court.

> While we have not previously held that parties may use the <u>England [v. Louisiana State Bd. of Med. Examiners</u>, 375 U.S. 411 (1964)] reservation procedure in cases that did not properly originate in federal court, we deem it appropriate to permit parties like Santini, who litigate state-law takings claims in state court involuntarily, to reserve their federal takings claims for determination by a federal court.
>
> * * *
>
> [P]arties may <u>explicitly reserve</u> their federal takings claims, <u>making clear to the state court and adverse parties</u> that they intend to bring a federal takings claim in federal court once the litigation of the state-law claim has been completed.

14

Santini, 342 F.3d at 130 (emphasis supplied). Here, however, plaintiffs never gave any indication to the state courts (or opposing counsel) that they were expressly "reserving" their federal constitutional claims for resolution in the federal forum. In fact, as noted above, plaintiffs actually litigated those claims.[2]

II. Res Judicata.

Even if the plaintiffs' constitutional claims were not precluded by virtue of the Rooker-Feldman doctrine, they would be barred by the doctrine of res judicata.

---

[2] It is, perhaps, worth noting that the Court of Appeals for the First Circuit has expressly rejected the use of an England reservation of federal claims in a condemnation/takings case quite similar to this one.

> [Plaintiff] argues that the federal constitutional issues were not raised in the state proceedings, but rather were reserved under England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964). The rule laid down in England is not applicable to this case. Section 1983 does not override state preclusion law by allowing plaintiffs to first proceed to judgment in state courts and then turn to federal courts for adjudication of federal claims. Thus plaintiff's argument re[garding] England is meritless.

Griffin v. Rhode Island, 760 F.2d 359, 360 n.1 (1st Cir. 1985) (parallel citations omitted). That case was, however, decided before the Supreme Court issued its opinion in Williamson.

The federal full faith and credit statute, 28 U.S.C. § 1738, commands federal courts to employ state rules of res judicata when determining the preclusive effect, if any, to be given to a prior state court determination.  See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Kremer v. Chemical Constr. Corp., 456 U.S. 461, 468 (1982).  Accordingly, if the Rooker-Feldman doctrine did not preclude this court from hearing plaintiffs' constitutional claims, the principles of res judicata, as developed by the New Hampshire Supreme Court, would apply.

Under New Hampshire law, "[t]he doctrine of res judicata precludes the litigation in a later case of matters actually litigated, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action."  In re Alfred P., 126 N.H. 628, 629 (1985) (citations omitted).  "In order for res judicata to apply to a finding or ruling, there must be 'a final judgment by a court of competent jurisdiction [that] is conclusive upon the parties in a subsequent litigation involving the same cause of action.'"  In

re Donovan, 137 N.H. 78, 81 (1993) (quoting Marston v. U.S. Fidelity & Guar. Co., 135 N.H. 706, 710 (1992)).

In other words, for the doctrine of res judicata to apply, "three elements must be met: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered on the first action." Brzica v. Trustees of Dartmouth College, 147 N.H. 443, 454 (2002). The term "cause of action" means the "right to recover, regardless of the theory of recovery." Eastern Marine Constr. Corp. v. First S. Leasing, 129 N.H. 270, 274 (1987) (citations omitted).

Here, each of those three essential elements is present. As to the existence of the first and third elements, there can be little doubt that the parties in the two proceedings are identical and the state supreme court resolved plaintiffs' claims against them on the merits. Finally, the "causes of action" advanced (and the underlying facts upon which those claims are based) in the two proceedings are also identical. In both this proceeding and the earlier state court proceeding, plaintiffs

17

asserted that the Town's delay in issuing the requested building permits under an invalid local ordinance amounted to an unconstitutional taking of their property and, therefore, entitled them to compensation. While plaintiffs may not have articulated their claimed entitlement to damages in precisely the same way in this and the earlier state court litigation, the "causes of action" are identical: claims for compensation stemming from the allegedly unconstitutional (albeit temporary) withholding of the requested building permits.

Finally, even if one could reasonably conclude that the causes of action advanced in the state court litigation are not identical to the Fourteenth Amendment claims advanced in this proceeding, it is beyond doubt that plaintiffs could have advanced their Fourteenth Amendment claims in the state court proceeding (and, as noted above, it is equally clear that they did not reserve those claims under England). Consequently, those claims are barred by the doctrine of res judicata, which precludes relitigation of all matters actually litigated and any matters that could have been litigated in the same proceeding. See Appeal of Univ. System of N.H. Bd. of Trustees, 147 N.H. 626,

18

629 (2002) ("Res judicata, or claim preclusion, bars the relitigation of any issue that was or might have been raised in respect to the subject matter of the prior litigation. In determining whether two actions are the same cause of action for the purpose of applying res judicata, we consider whether the alleged causes of action arise out of the same transaction or occurrence.") (citations and internal quotation marks omitted); Brzica, 147 N.H. at 455-56 ("Res judicata will bar a second action even though the plaintiff is prepared in the second action to present evidence or grounds or theories of the case not presented in the first action."); Radkay v. Confalone, 133 N.H. 294, 298 (1990) ("Generally, once a party has exercised the right to recover based upon a particular factual transaction, that party is barred from seeking further recovery, even though the type of remedy or theory of relief may be different.").

## Conclusion

For the foregoing reasons, as well as those set forth in defendant's memorandum and its reply memorandum, defendant's motion to dismiss (document no. 11) is granted. The Clerk of

19

Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 12, 2004

cc:  Duane J. Desiderio, Esq.
     Sumner F. Kalman, Esq.
     Michael A. Ricker, Esq.
     John J. Ryan, Esq.