Grafton
No. 2004-340

ROLAND DURHAM

v.

GARY DURHAM & a.

Argued: November 30, 2004
Opinion Issued: February 24, 2005

*Whittington Law Associates, PLLC*, of Hanover (*W. E. Whittington, IV* on the brief and orally), for the plaintiff.

*DesMeules, Olmstead & Ostler*, of Norwich, Vermont (*Tim A. Clark* on the brief), for the defendant.

DUGGAN, J. The plaintiff, Roland Durham, appeals an order of the Superior Court (*Houran*, J.) dismissing his petition for failure to state a claim and for lack of standing to sue. We affirm in part, vacate in part and remand.

The plaintiff's petition alleged the following facts. The plaintiff and the three defendants, Gary Durham, Martha Styer and Peter Durham, are the sole shareholders of Sunset Ranch Camp, Inc., a New Hampshire corporation. The plaintiff owns 4,000 shares of the corporation's stock and each defendant owns 2,000 shares. The corporation owns and operates the Sunset Ranch Camp in Orford. The plaintiff and the defendants are directors of the corporation. The defendants are also officers of the corporation. The plaintiff served as president from July 1996 through July 2000, when he was voted out as president and defendant Gary Durham was elected.

Since 1974, the camp has rented its facilities at market rates to families for camp use. Starting in 2000, defendant Gary Durham made two cabins in the camp his year-round residence without paying rent to the corporation. Defendants Martha Styer and Peter Durham have both used cottages on the camp property for their own and their families' personal use during the summer without paying rent to the corporation. In addition, the defendants have rented other cabins to their friends at substantially below-market rates. One cabin has been made available to the plaintiff for his personal use; however, the plaintiff resides in Orford and the cabin has

little value to him. The corporation's financial reserves have been reduced by approximately $17,600 since July 2000.

In addition, the plaintiff alleged in his petition that the defendants have failed to protect the camp's lake shore land, have permitted illegal tree cutting on the property and have failed to maintain adequate insurance on the property. Furthermore, the defendants have actively excluded the plaintiff from management of the corporation, even though the plaintiff owns forty percent of its shares and is a director.

The plaintiff alleged five counts directly against the defendants as shareholders, directors and officers of the corporation. His petition requested access to corporate records and an accounting, and alleged unlawful distributions, breach of fiduciary duty and willful and wanton conduct. The plaintiff did not name the corporation as a party to the action.

The trial court found that the plaintiff did not allege that the defendants owed him any special duty and that the plaintiff did not suffer any injuries separate from those suffered by the corporation, thus precluding a direct suit against the defendants. The trial court applied the "general rule that corporate claims are to be prosecuted either by the corporation or derivatively, but not through direct action by a shareholder," and dismissed the plaintiff's petition because he did not have standing as an individual shareholder to pursue a direct action against the defendants. The trial court also found that count I of the petition, requesting access to corporate records, was moot based upon the plaintiff's summary statement dated February 6, 2004.

On appeal, the plaintiff argues that practical and policy reasons justify allowing a direct, as opposed to derivative, action against the defendants because the plaintiff is the sole aggrieved shareholder and is suing all the remaining shareholders. The defendants argue that the trial court's ruling was proper because the plaintiff failed to bring a derivative action pursuant to the New Hampshire Business Corporation Act, RSA chapter 293-A (1999 & Supp. 2004), and the plaintiff failed to meet the requirements for a direct action against corporate fiduciaries. *See Appeal of Richards*, 134 N.H. 148, 155, *cert. denied*, 502 U.S. 899 (1991). We agree with the plaintiff.

In reviewing the trial court's grant of a motion to dismiss, our task is to ascertain whether the allegations pleaded in the plaintiff's petition are reasonably susceptible of a construction that would permit recovery. *Rayeski v. Gunstock Area*, 146 N.H. 495, 496 (2001). We assume that all facts pleaded by the plaintiff are true, and we construe all reasonable inferences drawn from those facts in the plaintiff's favor. *Id.* We then

engage in a threshold inquiry that tests the facts in the petition against the applicable law. *Id.* If the facts fail to constitute a basis for legal relief, we will uphold the granting of the motion to dismiss. *Cambridge Mut. Fire Ins. Co. v. Crete*, 150 N.H. 673, 675 (2004).

■ ■ In general, there are three ways in which an injury to a corporation may be remedied. First, the corporation, acting through its board of directors, may bring an action against the wrongdoer. *Appeal of Richards*, 134 N.H. at 155. Second, when the corporation fails to enforce a claim directly, a shareholder of the corporation may bring a derivative suit in which the shareholder acts as the nominal plaintiff in a cause of action against persons who have allegedly wronged the corporation. *Palmer v. U.S. Savings Bank of America*, 131 N.H. 433, 438 (1989). Third, a shareholder may bring a direct claim on his or her own behalf, and not as a derivative suit, when the shareholder's rights are directly affected. *Appeal of Richards*, 134 N.H. at 155. This occurs when (1) "'there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder'" or (2) "'the shareholder suffered an injury separate and distinct from that suffered by other shareholders.'" *Id.* (quoting 12B W. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5911, at 421 (rev. perm. ed. 1984)).

Prior to the commencement of a derivative proceeding, the New Hampshire Business Corporation Act requires a shareholder to make a written demand upon the corporation to take suitable action. RSA 293-A:7.42 (1999). The shareholder must wait until the demand has been rejected by the corporation's board of directors, or ninety days have passed, before bringing the derivative suit. *Id.* If a majority of the corporation's independent directors determines that the derivative proceeding is not in the best interests of the corporation, the trial court must dismiss the suit. RSA 293-A:7.44 (1999). Any recovery from the derivative proceeding accrues to the corporation, which is named as a defendant in the suit even though it is actually the real party in interest. *Palmer*, 131 N.H. at 438.

■ Courts generally require a shareholder to bring a derivative, as opposed to a direct, suit against corporate officers to redress injuries to the corporation because the derivative proceeding:

   ■ prevents a multiplicity of lawsuits by shareholders; [2] protects corporate creditors by putting the proceeds of the recovery back in the corporation; [3] protects the interests of all

shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and [4] adequately compensates the injured shareholder by increasing the value of his shares.

*Thomas v. Dickson*, 301 S.E.2d 49, 51 (Ga. 1983). Some courts have observed that many of these principles do not apply to closely-held (or "close") corporations because such corporations have a small number of shareholders and there is significant overlap between the ownership and management of the corporation. *See, e.g., Caswell v. Jordan*, 362 S.E.2d 769, 773 (Ga. Ct. App. 1987); *Barth v. Barth*, 659 N.E.2d 559, 561 (Ind. 1995).

The plaintiff urges us to expand a minority shareholder's ability to bring a direct suit against other members of a close corporation. The corporation here is typical of other close corporations in that the shareholders are few in number, know each other, and actively serve in the management of the business as officers or directors. *See Landstrom v. Shaver*, 561 N.W.2d 1, 13 n.15 (S.D. 1997). Because the corporation's shares are not publicly traded, the plaintiff as a minority shareholder does not have the opportunity to extricate himself from the corporation by selling his shares on the open market. *See Thomas*, 301 S.E.2d at 51. In addition, construing all reasonable inferences drawn from the well-pleaded facts below in the plaintiff's favor, we conclude for purposes of this analysis that the corporation's board of directors is not disinterested. In these circumstances, the formalities of the derivative proceeding may be impractical and unnecessary because the corporation does not have a disinterested board of directors and a multiplicity of suits is unlikely. *See* 2 F. O'NEAL & R. THOMPSON, O'NEAL AND THOMPSON'S CLOSE CORPORATIONS AND LLCS: LAW AND PRACTICE § 9:22, at 9-138 to 9-140 (3d ed. rev. 2004).

We recognize that "[i]n a close corporation, determining whether an action must be brought as a direct or derivative suit is often difficult." *Id.* at 9-133. The American Law Institute (ALI) has proposed the following standard for determining when a shareholder of a close corporation may proceed with a direct, rather than a derivative, action:

In the case of a closely-held corporation . . . , the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the

corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

AMERICAN LAW INSTITUTE, PRINCIPLES OF CORPORATE GOVERNANCE: ANALYSIS AND RECOMMENDATIONS § 7.01(d), at 17 (1994); *see, e.g., Barth,* 659 N.E.2d at 562; *Richards v. Bryan,* 879 P.2d 638, 648 (Kan. Ct. App. 1994); *Norman v. Nash Johnson & Sons' Farms, Inc.,* 537 S.E.2d 248, 258 (N.C. Ct. App. 2000); *Schumacher v. Schumacher,* 469 N.W.2d 793, 799 (N.D. 1991) (adopting ALI rule for breach of fiduciary duty by majority shareholders toward the minority shareholder). *But see Wessin v. Archives Corp.,* 592 N.W.2d 460, 466 (Minn. 1999) (declining to adopt exception and noting that "a closely held corporation is still a corporation with all of the rights and limitations proscribed by the legislature"); *Landstrom,* 561 N.W.2d at 14-15 (rejecting ALI rule).

The ALI factors have been criticized, however, for not including all relevant considerations in determining whether a suit should be direct or derivative. *See Landstrom,* 561 N.W.2d at 14. For example, the ALI rule does not take into account the fact that the goals of the minority shareholder may differ from those of the majority, such as short-term profits over long-term growth. *Id.* In some cases, a derivative proceeding may be preferable because it ensures that all of the corporation's shareholders, creditors, and employees recover according to their contractual and statutory obligations while adequately compensating the injured shareholder through an increase in the value of his shares. *See id.*

■ We are persuaded that "[t]he derivative/direct distinction makes little sense when the only interested parties are two individuals or sets of shareholders, one who is in control and the other who is not. In this context, the debate over derivative status can become purely technical." O'NEAL & THOMPSON, *supra* at 9-138 to 9-139 (quotation omitted). In cases such as this one, where the principles underlying the derivative proceeding are not served, the trial court should have the discretion to allow the plaintiff to pursue a direct claim against the corporate officers. *See Barth,* 659 N.E.2d at 561. Courts that continue to require a derivative proceeding in this context generally do so to promote consistency and predictability in corporate law. *See, e.g., Wessin,* 529 N.W.2d at 466; *Landstrom,* 561 N.W.2d at 14. While we agree that consistency in the law is important, we also recognize that the derivative proceeding involves burdensome, and often futile, procedural requirements when a minority

shareholder seeks to redress wrongful behavior by the majority shareholders. Furthermore, any recovery from a derivative proceeding goes to the corporation and thus would be under the control of the alleged wrongdoers.

On remand, the trial court may, in its discretion, allow the plaintiff to pursue his claims in a direct suit against the defendants, taking into account all of the above factors, including those suggested by the ALI, in making its determination. A direct action may be appropriate in this case because all of the corporation's shareholders are before the court as either the plaintiff or defendants; thus, there is no risk that a direct suit would expose the corporation to a multiplicity of actions. Furthermore, it appears that the corporation does not have a disinterested board of directors that could evaluate whether a derivative proceeding is in the best interest of the corporation. *See* RSA 293-A:7.44. On the other hand, the trial court should consider, for example, whether any of the corporation's creditors would be prejudiced by allowing the plaintiff to pursue a direct action against the defendants.

Finally, the plaintiff argues that the trial court improperly dismissed, as moot, count I of his petition requesting access to corporate records. The question of mootness is one of convenience and discretion and is not subject to hard-and-fast rules. *Petition of Thayer*, 145 N.H. 177, 182 (2000). In dismissing count I, the trial court relied upon the plaintiff's summary statement, dated February 6, 2004, which stated, "Concerning Count I, plaintiff now has access to corporate records. All other matters remain in dispute." The plaintiff argues that the fact that the court later ordered the defendants to produce documents in response to the plaintiff's motion to compel answers to interrogatories demonstrates that the issue was not moot. Furthermore, the plaintiff contends that the trial court improperly dismissed his claim without addressing his request for legal fees expended in obtaining the records. *See* RSA 293-A:16.04 (1999).

As a shareholder, the plaintiff has the right to inspect and copy, during regular business hours at the corporation's principal office, various corporate records as described in RSA 293-A:16.01(e) (1999) and RSA 293-A:16.02(b) (1999). The plaintiff must give the corporation written notice of his demand at least five business days before the date on which he wishes to inspect the records. RSA 293-A:16.02(a) (1999). If the corporation does not allow a shareholder to inspect and copy the records requested, the superior court may order inspection and copying of the records at the corporation's expense. RSA 293-A:16.04(a). The statute further provides, "*If* the court orders inspection and copying of the records demanded, it

*shall* also order the corporation to pay the shareholder's costs, including reasonable counsel fees, incurred to obtain the order" unless the corporation proves that it had a good faith basis for refusing to allow the inspection. RSA 293-A:16.04(c) (emphasis added).

The plaintiff's right as a shareholder to inspect corporate records differs from his right to production of documents through discovery as a litigant in this matter. *Compare* RSA 293-A:16.02(a) *with* SUPER. CT. R. 35(a), 36. In its order dated March 26, 2004, the trial court ordered the defendants to produce documents in response to the plaintiff's interrogatories but denied the plaintiff's requests for attorney's fees and costs under Superior Court Rules 36 and 59. Because the trial court properly found that the plaintiff's request for access to documents under RSA 293-A:16.02(a) was moot, the plaintiff also is not entitled to attorney's fees under RSA 293-A:16.04(c).

In light of the foregoing, we remand this matter to the trial court for further proceedings in accordance with this opinion.

*Affirmed in part; vacated in part; and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.