Merrimack
No. 2006-851

DR. SEYMOUR KESSLER

v.

AARON GLEICH, INDIVIDUALLY AND AS GENERAL PARTNER OF FIRE HOUSE BLOCK ASSOCIATES, L.P.

Argued: September 13, 2007
Opinion Issued: December 6, 2007

*Upton & Hatfield, LLP,* of Concord (*Charles W. Grau* and *Matthew R. Serge* on the brief, and *Mr. Grau* orally), for the plaintiff.

*Hall, Morse, Anderson, Miller & Spinella, P.C.,* of Concord (*Frank P. Spinella, Jr.* on the brief and orally), for the defendant.

HICKS, J. The defendant, Aaron Gleich, appeals a decision of the Superior Court (*Fitzgerald,* J.) finding that he willfully breached his

fiduciary duties to the plaintiff, Dr. Seymour Kessler, and other limited partners of Fire House Block Associates, L.P. We affirm.

The record supports the following. The defendant is the sole general partner of Fire House Block Associates, L.P. (FHBA), a limited partnership created to construct, own and operate a "Section 8" housing development in Concord. The plaintiff is one of several limited partners of FHBA.

FHBA financed the housing development through the New Hampshire Housing Finance Authority (NHHFA). As the sole general partner of FHBA exercising complete control over the management of the development, the defendant executed a regulatory agreement, as well as a mortgage and promissory note with the NHHFA. The regulatory agreement provided, in pertinent part: (1) that FHBA must manage the property "in a manner acceptable" to the NHHFA; and (2) that the NHHFA may require, at any time, that FHBA hire a property manager approved, in writing, by the NHHFA.

The partnership agreement governing FHBA required the general partner to hire a "[m]anagement [a]gent" who is acceptable to the NHHFA and to manage the property "in accordance with" NHHFA requirements. The partnership agreement further provided that the limited partners may remove any general partner "found by a court of competent jurisdiction ... to have willfully violated its fiduciary responsibility as a General Partner."

On several occasions between 1997 and 2004, the defendant was notified by the NHHFA that FHBA was in violation of the regulatory agreement for failing to contract with a managing agent approved by the NHHFA. The NHHFA further informed the defendant that if FHBA did not comply with the terms of the regulatory agreement, the NHHFA would consider foreclosing on the property. In 2002, the NHHFA stepped in and arranged for an approved managing agent to manage the property until FHBA complied with the regulatory agreement.

By letter dated August 23, 2004, the NHHFA again notified the defendant that FHBA was in default of the regulatory agreement. The letter provided that FHBA had fifteen days to hire an approved managing agent; otherwise, the NHHFA would accelerate the entire amount due under the note and mortgage and, in the event of nonpayment, would begin foreclosure proceedings. FHBA failed to cure the default and the defendant was notified by letter dated October 1, 2004, that the NHHFA would begin foreclosure proceedings.

The defendant never notified the limited partners of the default or the commencement of foreclosure proceedings. The plaintiff learned of the foreclosure through his attorney and intervened to enjoin the sale of the

property at auction. The defendant subsequently joined in the plaintiff's efforts to enjoin the auction. The foreclosure auction was temporarily enjoined pending resolution of the present action.

In October 2004, the plaintiff filed a petition for a declaratory judgment, *see* RSA 491:22 (1997), that the defendant "has violated his fiduciary duties to [the plaintiff] and the limited partners" and that such violations were willful. In December 2005, the defendant moved to dismiss, asserting that the plaintiff lacked standing to bring an individual suit, and was limited to a derivative action on behalf of the partnership. The court denied the defendant's motion, finding that it was filed after the deadline for dispositive motions set by the court in the structuring conference order. The defendant raised the standing issue in his requested findings of fact and rulings of law, asserting that although the court had found his previous motion was untimely, he was raising standing again because "[s]tanding challenges may be raised at any point in the proceedings." (Quotation omitted.) The trial court did not address this issue in its final order.

On March 8, 2006, the court ruled that the defendant had the burden of proving at trial that he had dealt fairly with the partnership and the limited partners.

After a two-day hearing held on March 22 and 23, 2006, the trial court issued an order ruling, *inter alia*, that the defendant:

> 1) willfully breached his fiduciary duty of loyalty to the limited partners by failing to adhere to the requirement of the partnership agreement and other governing documents that he have an approved managing agent, thus endangering the viability of the partnership and the limited partners' interests; [and] 2) willfully breached his fiduciary duty of loyalty to the limited partners by permitting the FHBA to be defaulted for not having a proper managing agent, thus endangering the viability of the partnership and the limited partners' interests.

On appeal, the defendant argues: (1) the plaintiff lacked standing to sue as an individual partner; (2) the trial court erred in allocating the burden of proof to the defendant; (3) the evidence was insufficient to establish that the defendant *willfully* breached his fiduciary duties; and (4) the defendant's ability to cure the default and stop the foreclosure precludes a finding that he willfully breached his fiduciary duties.

"We will affirm the trial court's factual findings unless they are unsupported by the evidence and we will affirm the trial court's legal rulings unless they are erroneous as a matter of law." *Osman v. Gagnon*, 152 N.H. 359, 361 (2005).

## I. Standing

The defendant argues that the plaintiff lacks standing to pursue declaratory judgment "in his own right" because such an action belonged to the partnership as a derivative action. The plaintiff counters that the action was properly brought as an individual action based upon the defendant's breach of fiduciary duties owed to the plaintiff individually "as a limited partner under the common law" as well as "under the [partnership agreement] the parties executed."

We note that there is a dispute between the parties as to whether this standing argument is subject to waiver. We assume, for purposes of this appeal only, that it is not subject to waiver and therefore we address the substance of the defendant's standing argument.

> When a limited partner seeks to recover for a breach of fiduciary duty by general partners in a partnership, three types of claims are possible. A limited partner can pursue an individual claim directly against the general partners for harm specific to that limited partner. In the other two kinds of relief, the plaintiff limited partner represents not just itself: the plaintiff can bring a direct claim against the general partners in a class action suit on behalf of all limited partners, or the plaintiff can allege a derivative suit on behalf of the partnership against the general partners.

*Caparos v. Morton*, 845 N.E.2d 773, 781 (Ill. App. Ct.) (citation omitted), *appeal denied*, 852 N.E.2d 238 (Ill. 2006); *cf. Durham v. Durham*, 151 N.H. 757, 760 (2005) (discussing claims available to shareholders of a corporation).

In determining the appropriate claim to be made by a partner in a limited partnership, many jurisdictions apply principles of corporate law. *Caparos*, 845 N.E.2d at 781; *Anglo Am. Sec. Fund v. S.R. Global Fund*, 829 A.2d 143, 149 (Del. Ch. 2003).

We are not convinced, however, that principles governing corporate law are always suitable for application to a limited partnership, whose structure can differ dramatically from that of a corporation. *See* Burkhard, *LLC Member and Limited Partner Breach of Fiduciary Duty Claims: Direct or Derivative Actions?*, 7 J. SMALL & EMERGING BUS. L. 19, 32 (2003). *See generally* RSA ch. 293-A (New Hampshire Business Corporation Act) (1999 & Supp. 2007); RSA ch. 304-B (Uniform Limited Partnership Act) (2005 & Supp. 2007).

In a corporation,

[c]ourts generally require a shareholder to bring a derivative, as opposed to a direct, suit against corporate officers to redress injuries to the corporation because the derivative proceeding:

[1] prevents a multiplicity of lawsuits by shareholders; [2] protects corporate creditors by putting the proceeds of the recovery back in the corporation; [3] protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and [4] adequately compensates the injured shareholder by increasing the value of his shares.

*Durham*, 151 N.H. at 760-61 (quotation omitted). In *Durham*, we stated that these concerns may not necessarily apply to closely-held corporations, where there is a "small number of shareholders and . . . significant overlap between the ownership and management of the corporation." *Id.* at 761. "In [such] circumstances, the formalities of the derivative proceeding may be impractical and unnecessary because the corporation does not have a disinterested board of directors and a multiplicity of suits is unlikely." *Id.* Accordingly, we held that "[i]n cases such as this one, where the principles underlying the derivative proceeding are not served, the trial court should have the discretion to allow the plaintiff to pursue a direct claim against the corporate officers." *Id.* at 762.

■ Similar considerations may also present themselves in limited partnership cases. As the Court of Chancery of Delaware recognized in an unreported decision: "In the partnership context, the relationships among the parties may be so simple and the circumstances so clear-cut that the distinction between direct and derivative claims becomes irrelevant," and that in such situations, "superimposing derivative pleading requirements upon claims needlessly delays ultimate substantive resolution and serves no useful or meaningful public policy purpose." *In re Cencom Cable Income Partners, L.P.*, No. C.A. 14634, 2000 WL 130629, at *3 (Del. Ch. Jan. 27, 2000). Accordingly, we conclude that "[a]pplication of corporate law rules to disputes related to a limited partnership necessitates a bit of flexibility." *Anglo Am. Sec. Fund*, 829 A.2d at 150.

■ The parties do not dispute that the defendant owed fiduciary duties to the plaintiff, a limited partner. The defendant, however, claims that because the alleged breach of his fiduciary duties "affect[s] all partners equally," it is required to be brought as a derivative action. We disagree. We find that to require the declaratory judgment action be brought as a derivative action would "serve[] no useful or meaningful public policy purpose." *Cencom*, 2000 WL 130629, at *3.

Under the facts of this case, the principles underlying the need for a derivative suit have little applicability. The risk of a multiplicity of lawsuits is remote. *See Durham*, 151 N.H. at 760. At oral argument, the plaintiff stated the reason for his declaratory judgment action was to obtain a ruling that the defendant had willfully breached his fiduciary duties in order to trigger the clause in the partnership agreement allowing for the defendant's removal. As a practical matter, all parties are bound by the outcome herein. It is unlikely that any other limited partner would bring a subsequent suit seeking identical relief.

The remaining three factors noted in *Durham* supporting the need for a derivative action concern the recovery sought. *See id.* at 760-61. Where a partner brings a direct suit seeking monetary damages, there is a concern that any recovery will accrue to the benefit of the single partner to the detriment of the partnership, the partnership's creditors and the remaining partners. *See* Burkhard, *supra* at 60-61. Here, however, the plaintiff seeks only relief in equity, through a declaratory judgment action. The usual concerns regarding who receives the benefit of any monetary recovery are therefore not implicated. Moreover, it is unlikely that the outcome of this case would change even if it had been brought as a derivative action. The trial court found that the defendant "willfully breached his fiduciary duty of loyalty to the *limited partners*." (Emphasis added.) Accordingly, we hold that the plaintiff had standing to bring a direct action in this case.

## II. Burden of Proof

The defendant argues that the trial court erred in allocating the burden of proof to him to prove that he did not breach his fiduciary duties to the limited partners. Assuming, arguendo, that this was error, we find it to be harmless. "Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment will not be disturbed." *Appeal of Ann Miles Builder*, 150 N.H. 315, 320 (2003) (quotation omitted).

In its order, the trial court stated:

Also, to be clear, the Court notes that although the burden of proof lies with the defendant, even if it did not, the Court would still find that the defendant's willful failure to have a proper managing agent such that the partnership was defaulted, was a breach of his duties to the partnership and the limited partners.

The defendant argues, however, that the court's statement addresses only one of its final rulings—that the defendant willfully breached his

fiduciary duty with respect to allowing FHBA to go into default—and that it is unclear whether the trial court would have reached the same result on its ruling regarding the defendant's failure to maintain a proper managing agent. We disagree. The trial court's statement specifically addresses the defendant's "willful failure to have a proper managing agent." We find, therefore, that the court's statement encompasses both its findings regarding the defendant's willful breach.

Alternatively, the defendant argues that the error is not harmless because as the party bearing the burden of proof, he suffered the "strategic disadvantage" of presenting his case first. Even if we were to agree with the defendant's characterization, we find that upon the facts of this case as found by the trial court, any such "disadvantage" did not affect the outcome of the case below. *See id.*

### III. Sufficiency of the Evidence

The defendant next argues that the evidence was insufficient for the trial court to find that he *willfully* breached his fiduciary duties. We disagree.

"Willful" is defined as "[v]oluntary and intentional, but not necessarily malicious," BLACK'S LAW DICTIONARY 1630 (8th ed. 2004), and "done deliberately: not accidental or without purpose: intentional," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2617 (unabridged ed. 2002). In certain contexts, we have defined a "willful act" as a "voluntary act committed with an intent to cause its results." *Miller v. Slania Enters.*, 150 N.H. 655, 662 (2004) (regarding landlord-tenant matter); *Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 801 (1985) (regarding employment matter). However, "'willful' is a word of many meanings depending upon the context" in which it is used. *Miller*, 150 N.H. at 662.

The defendant argues: "Proof of willful actions (or omissions), which then put into motion a chain of events that harm the partnership, is not enough. There must be proof of willfulness in the sense of *intending* those harmful consequences." We believe that the defendant carries the "willful" element too far in the context of this case. The plaintiff seeks a declaration that the defendant's "violations of his fiduciary duties were willful"; the evidence must be sufficient, therefore, to show that the defendant intentionally violated his fiduciary duties. *Cf.* BLACK'S LAW DICTIONARY, *supra* at 1630. It is not necessary in this case to show that he also intended all consequences resulting from the violations.

The defendant further argues that the meaning of "willfulness" is governed by a provision in the partnership agreement captioned *"Liability of General Partners to Other Partners,"* which provides: "No General

Partner shall have any liability or obligation to the . . . Limited Partners . . . for any decision made or action taken in connection with the discharge of his duties hereunder, if such decision or action is made or taken *in good faith.*" (Emphasis added.) The defendant argues that based upon this provision, "[a] 'willful' breach of fiduciary duty, therefore, must be one taken in bad faith." We disagree.

This provision of the partnership agreement does not add a "bad faith" requirement to the definition of "willful." It simply states that a finding of "good faith" may protect the defendant from liability or obligation. Although the trial court did not specifically undertake a good faith analysis, an explicit finding of a lack of good faith is not necessary in this case. The trial court's finding that the defendant acted willfully in breaching his fiduciary duties necessarily precludes a concurrent finding that the defendant also acted in good faith. *Cf. Ives*, 126 N.H. at 802 (construing the phrase "willfully and without good cause" in the employment context "as a single phrase meaning voluntarily" because "it is difficult to imagine a case in which it would be fair and just for an employer to withhold wages at the same time that he acts willfully").

Accordingly, based upon our interpretation of the term "willful" in the present context, we next look to the record to determine if the evidence was sufficient for the trial court to find that the defendant willfully breached his fiduciary duties. We note that, on appeal, the defendant argues only that any breach of his fiduciary duties was not willful; he does not argue that he did not breach his fiduciary duties. Accordingly, we address only the trial court's finding of willfulness.

■ The record contains ample evidence that the defendant acted willfully. At the hearing on the merits, the defendant testified that he knew the regulatory agreement required him to have a managing agent approved by the NHHFA at all times and that he was not willing to abide by this requirement. He testified that he received numerous letters from the NHHFA informing him that he was "in violation" of the regulatory agreement and that he chose not to respond. He further testified that in August 2004, he received a notice from the NHHFA threatening to place FHBA in default for failing to contract with an approved managing agent. Again the defendant, in his own words, "did not do anything" upon receiving this notification. This evidence was sufficient for the trial court to find that the defendant willfully breached his fiduciary duties by refusing to comply with the requirements of the NHHFA, as required under the partnership agreement.

*IV. Defendant's Ability to Cure the Default*

Finally, the defendant argues that the declaratory judgment cannot lie because he has joined the plaintiff in opposing foreclosure and can cure the default imposed by the NHHFA at any time by contracting with an approved managing agent. Therefore, he argues, no "adverse claim" exists as is required to maintain a declaratory judgment action. *See* RSA 491:22.

"The remedy of declaratory judgment affords relief from uncertainty and insecurity created by a doubt as to rights, status or legal relations existing between the parties. Petitions for declaratory relief must be liberally construed so as to effectuate the evident purpose of the law." *Benson v. N.H. Ins. Guaranty Assoc.*, 151 N.H. 590, 593-94 (2004).

The plaintiff brought this declaratory judgment action alleging the defendant's breach of fiduciary duties on several counts, including placing the partnership's asset at risk of foreclosure. However, the issues on appeal do not concern foreclosure. They concern whether the defendant willfully breached his duties by: (1) failing to comply with the NHHFA regulatory agreement and contract with an approved management agent; and (2) allowing the partnership to go into default with the NHHFA. Future developments such as foreclosure proceedings, or lack thereof, are of no consequence to our decision here. The defendant's failure to contract with an approved managing agent, thereby causing the partnership to go into default, constituted a breach of his fiduciary duties; whether or not he can "cure" the default is irrelevant, as the breach has already occurred. Such a claim is appropriate for declaratory judgment. *Cf.* 22A AM. JUR. 2D *Declaratory Judgments* § 119 (2003) ("Declaratory judgments are frequently rendered to interpret or construe contracts and declare their effect, [and] to determine whether there has been performance or breach . . . ." (footnote omitted)).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.