Grafton
No. 2010-179

## B.V. BROOKS & a.

v.

## TRUSTEES OF DARTMOUTH COLLEGE

Argued: February 10, 2011
Opinion Issued: April 12, 2011

686

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Eugene M. Van Loan, III* and *Stephen J. Judge* on the brief, and *Mr. Van Loan* orally), for the petitioners.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Bruce Felmly* on the brief), and *Sullivan & Cromwell LLP*, of New York, New York (*Richard C. Pepperman, II* on the brief and orally), for the respondents.

*Upton & Hatfield, LLP*, of Portsmouth (*Russell F. Hilliard* on the brief), for the Association of Alumni of Dartmouth College, as *amicus curiae*.

*Zalkind, Rodriguez, Lunt & Duncan LLP*, of Boston, Massachusetts (*Harvey Silverglate* and *Ruth O'Meara-Costello* on the brief), and *Bernstein, Shur, Sawyer & Nelson, P.A.*, of Manchester (*Andru H. Volinsky* on the brief), for Professor Todd J. Zywicki, as *amicus curiae*.

DALIANIS, C.J. The petitioners, seven Dartmouth College alumni and members of the Association of Alumni of Dartmouth College (Association), appeal the order of the Superior Court (*Vaughan*, J.) granting summary judgment to the respondents, the Trustees of Dartmouth College (Trustees), on the petitioners' petition for declaratory and equitable relief. The petitioners argue that the trial court erroneously ruled that some of their claims were barred by the doctrine of res judicata and that they lacked standing to bring their remaining claims. We affirm.

*I. Background*

The relevant facts follow. The Dartmouth College Board of Trustees was created by charter in 1769. *Brzica v. Trustees of Dartmouth College*, 147 N.H. 443, 452 (2002). At that time, there were twelve trustees and vacancies were filled by a majority vote of trustees. *Id.* In 1891, in separate meetings, the board of trustees and the Association approved a new method of electing trustees. The petitioners refer to the new method of election as the "1891 Agreement," although, in fact, the board and the Association never created or signed a written agreement memorializing their approval of the new election method. *See id.*

The new method allowed the Association to nominate suitable persons for five trusteeships (Alumni Trustees). *See id.* Another five trustees (Charter Trustees) were to be nominated by the board. The Governor of New Hampshire and the President of the college occupied the remaining two trusteeships, serving as *ex officio* trustees.

Although the total number of trustees increased in 1961 and 2003, the number of Alumni Trustees remained equal to the number of Charter Trustees. The parties refer to this as "parity." In September 2007, however, the board voted to expand its size by adding new Charter Trustees. New Alumni Trustees were not added, thus making the number of Alumni and

Charter Trustees unequal. As a result, Alumni Trustees comprised only one-third, and no longer one-half, of the non-*ex officio* trustees on the board.

In response, the Association sued the Trustees for breach of contract, breach of implied-in-fact contract and promissory estoppel. The breach of contract claims alleged that the Trustees breached an express or implied-in-fact contract to maintain parity between Alumni and Charter Trustees; the promissory estoppel count alleged that, even in the absence of a contract, the Trustees were barred by promissory estoppel from eliminating parity.

In June 2008, the alumni elected a new executive committee for the Association. In the campaign preceding the election, two slates of candidates ran against one another, the "Unity Slate" and the "Parity Slate." The Parity Slate of candidates pledged to continue the lawsuit against the Trustees; the Unity Slate pledged to dismiss it. The Unity Slate won the election, and consistent with its campaign promises, adopted resolutions to dismiss the Association's lawsuit against the Trustees. Shortly thereafter, the Association and the Trustees entered into a stipulation to dismiss the Association's lawsuit with prejudice. The court approved the stipulation in a June 30, 2008 order.

In November 2008, the petitioners filed the instant lawsuit alleging claims for breach of contract, breach of implied-in-fact contract and promissory estoppel. The petitioners' breach of contract claims allege that the Trustees breached an express or implied-in-fact contract to maintain parity between Alumni and Charter Trustees. Their promissory estoppel claim alleges that the Trustees are barred by that doctrine from eliminating parity. The petitioners bring their breach of express contract claims either as third-party beneficiaries of the "1891 Agreement," or as Association members. They bring their breach of implied-in-fact contract claim only as third-party beneficiaries of the "1891 Agreement." They bring their promissory estoppel claim on their own behalf (neither as third-party beneficiaries of a promise made by the Trustees to the Association nor as Association members).

The Trustees moved for summary judgment, arguing that dismissal of the petitioners' lawsuit was warranted because: (1) it is barred by the doctrine of res judicata; and (2) the petitioners lack standing to sue to enforce the alleged "1891 Agreement" between the trustees and the Association. The trial court ruled that res judicata barred the petitioners' claims for breach of contract based upon their status as Association members and barred their promissory estoppel claim. Because the court found that the petitioners were not, in fact, third-party beneficiaries of the

"1891 Agreement," the court ruled that they could not prevail upon their breach of contract claims brought in that capacity. This appeal followed.

## II. Discussion

We review the trial court's rulings on summary judgment by considering the affidavits and other evidence in the light most favorable to the non-moving party. *See S. N.H. Med. Ctr. v. Hayes*, 159 N.H. 711, 715 (2010). If this review does not reveal any genuine issues of material fact, *i.e.*, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm. *Id.* We review the trial court's application of law to fact *de novo. Id.*

### A. Res Judicata

■ We first address whether the trial court erred when it ruled that res judicata barred the petitioners' promissory estoppel and breach of express contract claims, which they brought as Association members. The applicability of res judicata is a question of law, which we review *de novo. Meier v. Town of Littleton*, 154 N.H. 340, 342 (2006). Res judicata precludes the litigation in a later case of matters actually decided, and matters that could have been litigated, in an earlier action between the same parties for the same cause of action. *Id.* For the doctrine to apply, three elements must be met: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered in the first action. *Id.* We address each element in turn, limiting ourselves to the specific arguments the petitioners have briefed on appeal.

#### 1. Same Parties

■ It is undisputed that the petitioners were not parties to the Association's lawsuit against the Trustees. "Although generally res judicata does not apply to nonparties to the original judgment, this rule is subject to exceptions." *Sleeper v. Hoban Family P'ship*, 157 N.H. 530, 533 (2008). One exception concerns "a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (quotation and brackets omitted). "The substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.' " *Sleeper*, 157 N.H. at 534 (quotation omitted); *Sturgell*, 553 U.S. at 894 n.8. Qualifying relationships include unincorporated associations and their members. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 61 (1982) (RESTATEMENT); *see also Headwaters, Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1053 (9th Cir. 2005).

■ Pursuant to Section 61 of the RESTATEMENT, "[i]f under applicable law an unincorporated association is not treated as a jural entity distinct from its members, . . . [a] judgment in an action by or on behalf of members of the association is binding on the members in accordance with the rules stated in §§ 41 and 42." RESTATEMENT, *supra* § 61(1)(a). Under the RESTATEMENT, as a rule, "[a] person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party." RESTATEMENT, *supra* § 41(1). If, on the other hand, "under applicable law an unincorporated association is treated as a jural entity distinct from its members, a judgment for or against the association has the same effects with respect to the association and its members as a judgment for or against a corporation, as stated in § 59." RESTATEMENT, *supra* § 61(2). Under Section 59 of the RESTATEMENT, generally speaking, "a judgment in an action to which a corporation is a party has no preclusive effects on a person who is an officer, director, stockholder, or member of a non-stock corporation." RESTATEMENT, *supra* § 59.

Thus, under the RESTATEMENT, if the applicable law treats an unincorporated association as a jural entity, then, as a rule, a judgment against the association will *not* have preclusive effect on an association member. By contrast, if the applicable law does not treat an unincorporated association as a jural entity, then, in general, a judgment against the association *will* have preclusive effect. *See* RESTATEMENT, *supra* § 35 comment *d* at 353-54.

■ New Hampshire adheres to the traditional common law view that an association is *not* a jural entity distinct from its members, except as may be specifically provided by statute. *See Shortlidge v. Gutoski*, 125 N.H. 510, 513 (1984); *see also* RESTATEMENT, *supra* § 61 comment *a* at 118-20 (explaining difference between common law view that unincorporated association is aggregate of individuals and modern view that unincorporated association is entity apart from its individual members). In *Shortlidge*, we held: "A voluntary association, except as provided for by statute, *see* RSA 292:12-14 (unincorporated associations deemed corporations for receiving and using donations), *has no legal existence apart from the members who compose it.*" *Shortlidge*, 125 N.H. at 513 (emphasis added).

■ The statutes to which *Shortlidge* referred specifically provide that for some purposes, an unincorporated association *is* a jural entity, which means that it may sue and be sued just as a corporation may sue and be sued. *See* RSA 292:12-:14 (2010). For instance, while at common law, an unincorporated association had no ability to hold property, *see* RESTATEMENT, *supra* § 61 comment *a* at 118, RSA 292:12 specifically provides that unincorpo-

rated "societies or lodges of Elks, Knights of Columbus, ... or other similar fraternal organizations shall be corporations" for the purpose of taking, holding, managing or using any gifts or grants made to them. Under RSA 292:12, these organizations, societies and lodges "may sue and be sued in regard to such property in said corporate capacity."

Because New Hampshire law does not treat an unincorporated association as a jural entity unless specific statutes provide that it be so treated, and because no statute that requires an unincorporated association to be treated as a jural entity applies to this case, whether the petitioners are bound by the judgment in the Association's lawsuit is governed by Sections 41 and 42 of the RESTATEMENT. *See* RESTATEMENT, *supra* § 61(1)(a).

■ Pursuant to RESTATEMENT § 41(1)(b), a person is represented by a party who is "[i]nvested by the person with authority to represent him in an action." "A person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process." RESTATEMENT, *supra* § 41(2).

■ The RESTATEMENT explains that a representative may be constituted as such through "some transaction antedating the litigation wherein the representative is given authority to manage and safeguard" another's interests. RESTATEMENT, *supra* § 41 comment *a* at 394. "In such circumstances, the authority and responsibility to represent the [represented party] in litigation is a concomitant of the representative's general managerial authority and responsibility for the matter entrusted to him." RESTATEMENT, *supra* § 41 comment *a* at 394. Such "[p]rivately constituted representatives" include "[a] trustee of a trust," who, by "virtue of his nomination by the settlor," has "authority to represent the estate, and the interests of those who are its beneficiaries." RESTATEMENT, *supra* § 41 comment *b* at 394. However, "[f]iduciary authority and responsibility for management of interests of others may repose in relationships other than a trust." RESTATEMENT, *supra* § 41 comment *b* at 395. "One such relationship . . . is that of the managing officers of an unincorporated association with regard to association property and contracts." RESTATEMENT, *supra* § 41 comment *b* at 395.

■ Here, the petitioners are bound by the judgment in the Association's lawsuit against the Trustees because of the relationship between the Association and its members. Although the petitioners contend that they never personally gave the Association's executive committee the authority to dismiss its lawsuit against the Trustees, this is not required. The Association's executive committee had the authority to act as it did because

it is the managerial arm of the Association and, as such, had "the requisite authority, and generally the exclusive authority, to participate as a party" on behalf of the Association's members. RESTATEMENT, *supra* § 41 comment *a* at 394.

The petitioners contend that, notwithstanding the RESTATEMENT, "under New Hampshire law, *both* an unincorporated association *and* its members may sue to enforce the association's contracts." To support this assertion, they rely upon *Kessler v. Gleich*, 156 N.H. 488, 492-94 (2007), in which we ruled that a limited partner could bring a declaratory judgment proceeding against a general partner directly, and did not have to proceed through a derivative action. Res judicata was not an issue in *Kessler*, and, thus, *Kessler* is no support for the petitioners' argument.

The petitioners also argue that because "the undisputed facts establish that the[y] . . . had no involvement whatsoever in the Prior Lawsuit," they cannot be or should not be deemed to be in privity with the Association. This argument is based upon a *different* exception to the general rule that res judicata does not apply to nonparties to the original judgment. Under this exception, "a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered." *Sturgell*, 553 U.S. at 895 (quotation and brackets omitted); *see* RESTATEMENT, *supra* § 39; *see also Daigle v. City of Portsmouth*, 129 N.H. 561, 571 (1987). Here, the petitioners are deemed to be in privity with the Association because of their relationship with the Association, not because they assumed control over the Association's lawsuit.

Without citing any authority, the petitioners assert that "the normal rule that mere membership in an unincorporated association constitutes an implied grant of authority to the managing officers thereof to represent [association members] with respect to association business presumes some type of voluntary action upon the part of association members in joining the association." They argue that the "normal rule" does not apply to them because they became members of the Association automatically upon graduating from Dartmouth College. We consider this argument insufficiently developed, and decline to address its merits. *See Sabinson v. Trustees of Dartmouth College*, 160 N.H. 452, 459 (2010).

With respect to their promissory estoppel claim, in particular, the petitioners contend that their right to bring such a claim "vested" and cannot be divested by the stipulation between the Trustees and the Association. We consider this argument to be insufficiently developed for appellate review as well. *See id.*

The petitioners argue that the executive committee lacked the authority to settle the Association's lawsuit by agreeing to dismiss it with prejudice, because, by so doing, the committee "cancell[ed]" the 1891 Agreement, and

such a cancellation can be effected only by a vote of the Association's members. They reason that because the 1891 Agreement was originally adopted by the Association by a vote of its members, and because "over the years, when changes have been made to the procedures to be used by the Association for the election of Alumni Trustees, these changes have been adopted by its members," the executive committee could not take action to "cancel" the 1891 Agreement absent a vote by the membership.

The petitioners do not point to any provision in the Association's Constitution, however, that precludes the executive committee from acting as it did. In fact, the Association's Constitution specifically confers upon the executive committee authority over "the general interests of the Association."

The petitioners also argue that because the Association's Constitution "presupposes [the] existence" of the 1891 Agreement, settling the Association's lawsuit and thereby "cancel[ling]" the 1891 Agreement is tantamount to amending the Association's Constitution. The executive committee lacks the authority, the petitioners assert, to amend the Association's Constitution. The Trustees contend that the *Bricker* doctrine precludes us from considering the merits of the petitioners' argument. *See Bricker v. N.H. Medical Society*, 110 N.H. 469, 470 (1970). Under the *Bricker* doctrine, "[j]udicial interference in the internal affairs of associations is strictly limited and will not be undertaken in the absence of a showing of injustice or illegal action and resulting damage to the complaining member." *Id.*

We need not decide whether the *Bricker* doctrine applies because the petitioners' argument is based upon a faulty premise. The Association's Constitution is silent as to the 1891 Agreement, and we disagree with the petitioners that it "presupposes" the Agreement's existence. Accordingly, we do not construe it to preclude the executive committee from agreeing to release its claims against the Trustees based upon the 1891 Agreement.

### 2. Same Cause of Action

To the extent that the petitioners contest the second element of res judicata, whether their causes of action for breach of express contract and promissory estoppel are the "same" as the Association's claims for breach of contract and promissory estoppel, their challenge fails. We have defined a "cause of action" as "all theories on which relief could be claimed on the basis of the factual transaction in question." *Eastern Marine Const. Corp. v. First Southern Leasing*, 129 N.H. 270, 275 (1987). Here, the same factual transaction — the change in the composition of the board of trustees — forms the basis of the Association's and the petitioners' claims. Thus, the second element is met.

### 3. Final Judgment on the Merits

■■■ The petitioners concede that a voluntary dismissal with prejudice generally constitutes a final judgment on the merits. *See Cathedral of the Beechwoods v. Pare*, 138 N.H. 389, 391 (1994) (stipulated dismissal with prejudice is "on the merits" for res judicata purposes). They argue, however, that the dismissal at issue should *not* be considered a final judgment for res judicata purposes because it was a product of collusion, the stipulation was executed without proper authority, and, as a contract, the stipulation fails because the Association received no consideration for its agreement to terminate its lawsuit.

Of these arguments, we address only the first on its merits. The petitioners' second contention, that the stipulation for dismissal was executed without proper authority, is a reiteration of their prior argument that the executive committee lacked authority to settle the Association's lawsuit, which we have already addressed. We decline to address the merits of the petitioners' third contention, that the stipulated dismissal with prejudice cannot constitute a final judgment for res judicata purposes because it lacks consideration, because, although they are the appealing parties, they have failed to provide a record sufficient for us to review this argument. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004). The record does not contain evidence to establish that there was no consideration exchanged between the Association and Trustees, such as a copy of a settlement agreement between them. We cannot tell, for instance, whether Dartmouth College's payment of some of the Association's legal fees was part of a negotiated settlement. Absent a more complete record, which it was the petitioners' obligation to produce, we cannot ascertain whether, as they contend, the stipulated dismissal was unsupported by consideration.

■■■ We focus, therefore, upon the petitioners' first contention, that the stipulated dismissal with prejudice is not a final judgment for res judicata purposes because it was the product of collusion. RESTATEMENT § 75 governs when a nonparty may be able to set aside a judgment rendered to a party to whom the nonparty is bound through relationship. Section 75(2) provides: "A person bound by a judgment by virtue of having a relationship with a party . . . may obtain relief from the judgment if the party representing him failed to prosecute or defend the action with due diligence and reasonable prudence and the opposing party was on notice of facts making that failure apparent."

The rationale for this rule is as follows:

> The proposition that a non-party may be bound by a judgment through representation rests on the premise that the representative will adequately protect the non-party's interests. In the

relationships referred to in §§ 29, 41-61, but not in others, it is thought that the fiduciary responsibilities imposed on the representative or the correspondence between his interests and those of the represented person, or both, sufficiently assure the protection of the represented person. . . . Under the concept of representation, it also follows that the represented person cannot ordinarily attack the judgment by which he is bound. If he were freely able to attack the judgment, his joinder in the first instance would become practically necessary and the representative device would be ineffectual.

The question concerning relief from the judgment is not simply whether the represented person is to have any remedy at all for a judgment adversely determining his interests; it is whether he is to have the remedy of setting aside the judgment. . . .

It is clear that the represented party should be able to set aside a judgment that was procured by collusion between the party representing him and the opposing party. No worthy interest is served by sustaining such a judgment, and both private and public interests would be violated if the judgment were given effect in the face of such an attack. . . .

When the representative's mismanagement of the action cannot be said to amount to collusion, the question of giving relief is more complicated. . . .

RESTATEMENT, *supra* § 75 comments *b-d*, at 210-11; *see* RESTATEMENT, *supra* § 42 comment *f* at 411 ("[A] judgment is not binding on the represented person where it is the product of collusion between the representative and the opposing party.").

 The petitioners argue that the Association's mismanagement of its lawsuit against the Trustees amounted to collusion, and, thus, enables them to set aside the judgment. However, the undisputed facts upon which the petitioners rely, such as that counsel for the Association and counsel for the Trustees jointly drafted the stipulation and cooperated with one another in filing it with the court, do not demonstrate the type of fraudulent or collusive conduct that justifies barring enforcement of a judgment against a nonparty. *See State Farm Mut. Auto. Ins. v. Paynter*, 593 P.2d 948, 951 (Ariz. Ct. App. 1979) ("[T]he type of fraudulent and collusive conduct which might bar enforcement of a judgment against the defendant's insurer" ordinarily "involve[s] collusion by the plaintiff and the insured with respect

to the institution of the lawsuit in an effort to defraud the insurance company."); *Damron v. Sledge*, 460 P.2d 997, 1001 (Ariz. 1969) (settlement collusive when defendant "agrees to perjure himself and testify falsely to statements that are untrue" and plaintiff is a party to this agreement); *cf. Bedford School Dist. v. Caron Constr. Co.*, 116 N.H. 800, 802-03 (1976) (describing as having "collusive characteristics," "Mary Carter" agreements, which are "contract[s] by which one co-defendant secretly agrees with the plaintiff that, if such defendant will proceed to defend himself in court, his own maximum liability will be diminished proportionately by increasing the liability of the other codefendants). Accordingly, we reject the petitioners' assertion that the stipulated dismissal with prejudice is not a final judgment because it was the product of collusion. We hold that the Association's voluntary dismissal of its lawsuit with prejudice constitutes a final judgment on the merits for res judicata purposes and that the petitioners are bound by that judgment.

## B. Third-Party Beneficiary Claims

Having concluded that res judicata bars the petitioners' promissory estoppel claim and their claim for breach of express contract, which they brought as Association members, we turn next to whether the trial court erred when it ruled that they lacked standing to bring their breach of express or implied-in-fact contract claims as third-party beneficiaries. For the purposes of this discussion, we assume, without deciding, that the 1891 Agreement was, in fact, an enforceable contract between the Association and the Trustees.

The third-party beneficiary doctrine is an exception to the general rule that a non-party to a contract has no remedy for breach of contract. *Arlington Trust Co. v. Estate of Wood*, 123 N.H. 765, 767 (1983). "Third-party beneficiaries are nonparties to a contract who are nevertheless allowed to sue to enforce it because the parties intended them to have that right." *MacGregor v. Rutberg*, 478 F.3d 790, 794 (7th Cir. 2007) (applying Illinois law).

A third-party beneficiary relationship exists if: (1) the contract calls for a performance by the promisor, which will satisfy some obligation owed by the promisee to the third party; or (2) the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract. *Tamposi Associates v. Star Mkt. Co.*, 119 N.H. 630, 633 (1979). "A benefit to a third party is a 'motivating cause' of entering into a contract only where the promisee intends to give the beneficiary the benefit of the

promised performance." *Grossman v. Murray*, 144 N.H. 345, 348 (1999) (quotation omitted); *see* RESTATEMENT (SECOND) OF CONTRACTS § 302(1)(b) (1981).

 "Unless the performance required by the contract will *directly* benefit the would-be intended beneficiary, he is at best an incidental beneficiary." *Grossman*, 144 N.H. at 348 (quotation omitted). The fact that a third party is to receive some benefit through the performance of the contract does not make that party a third-party beneficiary of the contract. *See id.* Thus, for instance, as we explained in *Numerica Savings Bank v. Mountain Lodge Inn*, 134 N.H. 505, 512 (1991), all shareholders are not third-party beneficiaries of contracts between their corporations and other parties merely because "[e]very act which benefits a corporation will benefit, *indirectly*, its shareholders." Rather, under RESTATEMENT (SECOND) OF CONTRACTS § 302(1)(b), which we adopted in *Grossman*, 144 N.H. at 348, "the promise and its circumstantial setting must evince an intent on the part of the promisee to confer the benefit of promised performance on the would-be beneficiary." *Public Service Co. of N.H. v. Hudson Light & Power*, 938 F.2d 338, 342 (1st Cir. 1991). "In such cases, if the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him to enforce the promise, he is an intended beneficiary." *Id.* (quotation, brackets and emphasis omitted); *see* RESTATEMENT (SECOND) OF CONTRACTS, *supra* § 302 comment *d* at 442.

 In other words, it is not enough that the "contract manifests the parties' intention to confer upon [a third party] the benefit of the promised performance." Paglin, *Criteria for Recognition of Third Party Beneficiaries' Rights*, 24 NEW ENG. L. REV. 63, 69 (1989). Rather, the contract must show "that the parties considered the third party's legal status and intended to confer upon him a right to sue the promisor." *Id.* "The contractual intent to recognize a right to performance in the third person is the key." *Broadway Maintenance Corp. v. Rutgers*, 447 A.2d 906, 909 (N.J. 1982). "If that intent does not exist, then the third party is only an incidental beneficiary, having no contractual standing." *Id.* "[O]rdinarily a person's entitlement to sue to enforce a contract to which she's not a party must be expressed in the contract rather than implied. Parties to a contract are naturally reluctant to empower a third party to enforce their contract, and so courts hesitate to infer such a power." *MacGregor*, 478 F.3d at 794 (quotation and citations omitted).

 The petitioners do not point to anything in the record demonstrating that the parties to the 1891 Agreement intended to confer upon each individual alumnus the right to enforce it. Absent such evidence, we agree

with the trial court that the petitioners lack standing as third-party beneficiaries to sue to enforce the 1891 Agreement.

*Affirmed.*

DUGGAN and HICKS, JJ., concurred.